IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KATHERINE BELCASTRO GONZALEZ, | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **COMPLAINT** |
| CITY OF OMAHA, a Municipal | ) | **AND JURY DEMAND** |
| Corporation, TODD SCHMADERER, | ) | |
| Chief of Police of the Omaha Police | ) | |
| Department, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff Katherine Belcastro-Gonzalez, by and through her Attorneys of record, states and alleges as follows:

## GENERAL ALLEGATIONS:

1. The Plaintiff, Katherine Belcastro-Gonzalez, ( Gonzalez) is a resident of Omaha, Douglas County Nebraska, and a Captain employed by the Omaha Police Department (OPD). Gonzalez has been terminated by Chief Schmaderer (Schmaderer), reinstated by an arbitrator's order and again terminated by Schmaderer and is currently on Administrative leave from the City of Omaha Police Department.

2. The Defendant, City of Omaha, located in Douglas County, Nebraska, was and is a political subdivision within the State of Nebraska. The Defendant qualifies as an "Employer" within the meaning and definition of, according to *42 U.S.C. § 2000 (e) et. seq.*, in that the Defendant City of Omaha is engaged in an industry affecting commerce and has fifteen or more employees for each working day and twenty or more calendar weeks in the year.

3. Defendant, Chief of Police Todd Schmaderer is a resident of Omaha and employed by the City of Omaha Police Department, *R.R.S. 1943, § 14-601 et seq.*, with powers

and duties prescribed under *Neb.Rev.St. § 14-602* and was Gonzalez's superior for the duration of the matters at issue herein.

4. This is the second action brought by Gonzalez against the Defendants for retaliating against her for engaging in protected activities under *42 U.S.C. § 2000 (e) et. seq.* The jury in the first lawsuit found Gonzalez was retaliated against by Defendants when she was passed over for promotion to Deputy Chief and awarded her compensatory damages in the amount of Seven Hundred Thousand dollars.and over two hundred and eighty thousand in attorney fees. This current complaint is based on the Defendants' illegal and retaliatory actions taken after the events alleged in her first NEOC complaint, which could not be raised in the first trial because the NEOC had not yet investigated these subsequent actions.

5. On September 2, 2022, Gonzalez filed charges with the NEOC against Defendants for actions taken since the first charge was filed and continuing up through the filing of this lawsuit. Such charges were filed within 180 days after the alleged unlawful employment practices occurred. On November 6, 2023, the Nebraska Equal Opportunity Commission issued a right to sue letter to Gonzalez, thus meeting the procedural requirements of *42 U.S.C. §2000e-5(a)-(e)*.

6. This action arises under Title VII of the Civil Rights Act of 1964, *42 U.S.C. §2000e, et. seq. (2000)* as amended, to address the unlawful acts of prohibited retaliation and violations of the Nebraska Fair Employment Practices Act.

7. This Court has jurisdiction over the claims to the Plaintiff pursuant to *42 U.S.C. §§1331 and 1338*.

8. Defendants continued to retaliate against Gonzalez after the first filing with

the NEOC. In fact, the retaliation increased in intensity during the discovery phase of the first lawsuit ultimately leading to the firing of Gonzalez from her position of Police Captain on July 22, 2022, which was prior to the first retaliation trial. Even after her termination and the jury verdict, Defendants have continued to retaliate, all in violation of *42 U.S.C. 2000e-5 (g)*.

9. The termination of Plaintiff's employment was not only illegal retaliation, it also violated numerous provisions of the collective bargaining agreement governing the terms of her employment. These violations began with the fabrication of the primary charge brought against Gonzalez and used as a basis for her termination. That charge contended that Gonzalez violated policies by sending official police communications and records to her personal computer. Omaha Police Officers regularly sent e-mails to or otherwise accessed City documents, that they were given a right to read, on personal electronic devices such as smart phones and personal computers. There was no policy, regulations, or rule of conduct of the OPD prohibiting the transfer of such information to personal electronic devices.

10. As stated in her first NEOC complaint of 2018, Gonzalez reported to the Mayor and the NEOC that her internal affairs complaint was buried. Gonzalez learned that critical evidence was destroyed, and removed from the Internal Affairs case file on charges she and another female officer had made alleging that a male officer had discriminated against and harassed women under his command. That investigation was deliberately left incomplete, corrupting the proper process of an investigation. This confirmed Gonzalez's previous concerns the internal affairs unit was being abused, at times to favor and at other times to improperly punish officers  As a result, Gonzalez was deeply concerned that additional evidence she relied on would be lost or destroyed. To preserve evidence necessary to protect herself and other

3

officers from discrimination and retaliation, she sent relevant documents to her personal computer. As part of her lawsuit, a Protective Order was issued by the District Court controlling the use of some of these emails and other discovery documents.

11. Long before claiming Gonzalez had violated any rule or regulation, the Defendants were aware Plaintiff had copies of such documents. Defendants became aware in 2018 when some of the documents were provided to among others, the city attorney, and to the NEOC investigators. Nevertheless, it wasn't until years later, after the Defendants deposed Gonzalez and her husband, that they claimed that she violated the conditions of employment and was terminated. At that point it was clear, even to the Defendants, that the case was well founded, containing credible evidence of serious police misconduct, and would be presented to a jury. In response, Defendants intensified their retaliation and targeted Gonzalez for termination.

12. To justify the firing of Gonzalez the Defendants first fraudulently claimed her actions to preserve records for use in a lawsuit were a violation of the terms of her employment. In their haste to intimidate and retaliate, Defendants also violated numerous procedural rights and provisions of the collective bargaining agreement governing Gonzalez's employment.

13. Gonzalez appealed her termination pursuant to the collective bargaining agreement, ultimately submitting the matter to an independent arbitrator and winning reinstatement. Despite that reinstatement, within two weeks Defendants again terminated Plaintiff on the basis she sent four emails to her personal computer. Gonzalez was placed on administrative leave pending another appeal of the decision. Her termination is again being challenged as violating the collective bargaining agreement.

14. As if wrongfully terminating Gonzalez's employment was not enough,

Defendants have repeatedly attempted to sabotage Plaintiff's career opportunities with other employers. For example, Defendants attempted to wrongfully force her to quit her current employment which she obtained after the first time she was fired. Gonzalez found work supervising security. After Gonzalez was reinstated by order of the arbitrator, Chief Schmaderer knew he immediately intended to again fire Gonzalez. To sabotage her career even further, he ordered Gonzalez to immediately quit her security position because he would not give her permission to hold outside employment. Before she could obey the order and not even 24 hours after ordering Gonzalez to quit her job, and two weeks after receiving the arbitrator's reinstatement order, Defendant Schmaderer again fired her. This time the supposed wrongdoing was sending a few emails to her personal computer. If Gonzalez had complied with the order she would have been completely out of work with an increasingly damaged reputation and almost no chance for new employment. This was a deliberate effort to destroy any ability of the Plaintiff to maintain employment, mitigate her damages, and rebuild her career. This is clear retaliation because Defendant Schmaderer has allowed other officers convicted of serious crimes, including wrongful access and use of criminal intelligence data bases, to remain on the force.

15. In another example of retaliation, Defendants repeatedly tried to strip Gonzalez of her law enforcement certification which is required to work as a sworn officer in Nebraska. An officer's law enforcement certification is subject to review after a termination. On September 20, 2022, shortly after Gonzalez won her nearly one million dollar verdict award against Defendants for retaliation, her law enforcement certification was immediately reinstated by the Director of the Nebraska Law Enforcement Training Center. Even though the reinstatement letter clearly stated, "no further action will be taken against your law enforcement certification," Defendant

Schmaderer attempted to bypass the decision by writing a second letter to the Nebraska Crime Commissioner on December 28, 2022 requesting it to strip Gonzalez's certification.

16. Defendants also successfully derailed a very attractive job opportunity Gonzalez had with the City of Lincoln Nebraska Police Department. Gonzalez was in line to be the Public Information Officer, but Defendants refused to cooperate with a request for a background investigation that was required to be hired for the position.

17. Defendants Schmaderer continued to retaliate by adding inaccurate and baseless allegations of wrong doing to Gonzalez's Internal Affairs record. Sometime after discovery and the trial, and apparently after Gonzalez was reinstated by the arbitrator's order and placed on administrative leave, multiple additional and baseless charges were added to her internal affairs record. These alterations are added long after the initial entries and well past the time limit set in the collective bargaining agreement to levy charges. These false and wrongful statements are a desperate attempt to support the wrongful termination. These additional false statements also make it extremely difficult for Plaintiff to pursue her career by seeking advancement through new employment opportunities.

18. Gonzalez has also been denied critical privileges routinely provided to other officers, such as professional development and training opportunities. This includes but is not limited to use of the Defendant's shooting range so she can comply with the State's mandatory firearm qualification which is required to maintain her current law enforcement certification. The maintenance of this qualification is also critical to future employment opportunities. Defendants have taken other actions to hinder or destroy Gonzalez's employment opportunities.

## FIRST CAUSE OF ACTION
## RETALIATION

19.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 18 to the extent as if fully set forth herein.

20.     That the Plaintiff filed a claim based on her reasonable belief that Defendants had engaged in unlawful employment practices or wrongful conduct and was vindicated by the jury's verdict.

21.     That the Defendants and their agents and employees unlawfully retaliated against the Plaintiff for her lawful exercise of her civil rights by fabricating reasons to terminate her employment.

22.     That as a direct and proximate result of the Defendant's unlawful retaliation, Gonzalez has suffered economic losses and lost benefits in an amount to be determined at trial, and severe mental and emotional anguish from a severely damaged professional reputation and lost opportunities for pay increase and pension benefits.

WHEREFORE, the Plaintiff prays for judgment against the Defendants for compensatory damages, equitable relief pursuant to *42 U.S.C. § 2000e-5(g),* reasonable attorney's fees pursuant to *42 U.S.C. § 2000e-5(k),* her costs incurred herein and for such other relief deemed appropriate by the Court.

KATHERINE BELCASTRO-GONZALEZ,
Plaintiff

BY:   s/Thomas M. White
      Thomas M. White, #17452
      TOM WHITE LAW
      3114 St. Mary's Avenue
      Omaha, Nebraska 68105
      (402) 346-5700

ATTORNEY FOR PLAINTIFF